February 10, 2026

Michael Williams
Suite 1524
50-58 Macleay Street
Elizabeth Bay NSW 2011
Australia
Michael.Williams@glexia.com
+1 701 484 1337

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**PHILADELPHIA DIVISION**

| | |
|---|---|
| **Michael Williams**, an individual residing in New South Wales, Australia,<br><br>Plaintiff,<br><br>v.<br><br>**Connectify, Inc. (d/b/a Speedify)**, a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania<br><br>**Alexander C. Gizis**, an individual residing in Philadelphia, Pennsylvania<br><br>Defendants. | Civil Action No. 2:26-cv-00818-GJP<br><br>1) **EMERGENCY MOTION FOR TRO & PRELIMINARY INJUNCTION**<br>2) **CERTIFICATE OF SERVICE**<br>3) **PROPOSED ORDER** |

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Michael Williams ("Plaintiff"), appearing *pro se*, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 7.1 for entry of a Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendants Connectify, Inc. (d/b/a Speedify) and Alexander C. Gizis (collectively, "Defendants"). In support of this Motion, Plaintiff relies on the accompanying Memorandum of Law in Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Memorandum of Law"), filed simultaneously herewith, and submits three declarations: (1) the Declaration of Michael Williams in Support of Emergency Motion for Temporary Restraining Order (the "Williams TRO Declaration"), setting forth the factual basis for the requested relief with supporting exhibits, filed simultaneously herewith; (2) a Declaration of Michael Williams Regarding Notice and Compliance with Fed. R. Civ. P. 65(b) (the "Notice Declaration"), certifying that Plaintiff has provided Defendants with notice of this application and documenting Plaintiff's diligent efforts to notify Defendants of these proceedings, filed simultaneously herewith; and (3) the Declaration of James Foerst in Support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Foerst Declaration"), providing third-party evidence of the collateral irreparable harm caused by Defendants' conduct to non-party professional engagements and cryptocurrency-related interests, filed simultaneously herewith. Plaintiff further relies on the Verified Complaint, the [Proposed] Temporary Restraining Order, and the pleadings and exhibits filed herewith.

## I. RELIEF REQUESTED

Plaintiff respectfully requests that this Court enter an Order providing the following relief:

A. Service Restoration: Ordering Defendants, immediately and no later than two (2) hours after receiving notice of the Court's Order, to restore Plaintiff's access to Speedify

services by reactivating Plaintiff's paid router subscription and/or restoring any license, authentication, or entitlement required for Plaintiff to use Speedify on Plaintiff's "Powered by Speedify" router;

B. Injunction: Pending further Order of the Court, restraining Defendants (and their officers, agents, employees, and all persons in active concert or participation with them) from suspending, terminating, disabling, blacklisting, or otherwise interfering with Plaintiff's access to Speedify services, including by deactivating subscriptions or disabling device serial numbers or entitlements associated with Plaintiff's "Powered by Speedify" router;

C. Evidence Preservation: Ordering Defendants to preserve and not destroy or alter evidence relevant to this dispute, including account records, subscription records, support ticket communications (including Ticket No. 676251), device entitlement/serial number status, and internal communications relating to Plaintiff or Plaintiff's devices;

D. Expedited Hearing: Scheduling an expedited hearing on Plaintiff's request for a Preliminary Injunction at the earliest available time within the TRO period; and

E. Security: Setting an appropriate security amount under Rule 65(c), or waiving or nominally setting security given the limited scope of requested relief and Plaintiff's status as a *pro se* litigant.

## II. BASIS FOR RELIEF

As set forth in the accompanying Memorandum of Law and the Williams TRO Declaration, Plaintiff satisfies all four requirements for a TRO under the Third Circuit's four-factor test. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). The essential facts, drawn from the Verified Complaint and Williams TRO Declaration, are as follows.

February 10, 2026

1. Likelihood of Success on the Merits: Plaintiff demonstrates a reasonable probability of success on at least his breach of contract and trespass to chattels claims. On January 25, 2026, Plaintiff purchased a Speedify "Pro Router Yearly 3000GB Subscription" (Invoice #502472, USD $450.00) for use with his "Powered by Speedify" Miri X510 router (serial number 00A601241115008, purchase price AUD $2,725.82). (Verified Compl. ¶¶ 29, 39–42; Williams TRO Decl. ¶¶ 8–11.) When Plaintiff experienced performance issues with Speedify's "Redundant Mode," he opened Support Ticket No. 676251 with Defendants. (Verified Compl. ¶¶ 58–64.) During the support exchange on January 25, 2026, when Defendants raised the possibility of cancellation, Plaintiff expressly rejected it, writing: "Ok no I will keep the router license then thank you. I didn't know it would stop working." (Verified Compl. ¶ 67; Williams TRO Decl. ¶ 25.) The following day, January 26, 2026, Defendant Gizis, Connectify's CEO, personally intervened in the support thread and presented Plaintiff with a binary ultimatum: either troubleshoot "in a professional manner" or accept "a full refund." (Verified Compl. ¶ 66.) Plaintiff again declined cancellation, stating he would "remain available to troubleshoot the issue" while reserving his rights. (Verified Compl. ¶ 66.) Despite these two express rejections of cancellation, on January 27, 2026, at 14:39:55 UTC, Defendants unilaterally deactivated both of Plaintiff's Speedify subscriptions in rapid succession: the Router Plan at 14:39:55 UTC and the Families Plan (Invoice #494648, AUD $251.11) at 14:54:40 UTC. Defendants processed refunds within one second of each deactivation. All four emails were sent by "Alex from Speedify," specifically Defendant Gizis, confirming his personal direction of the termination. The deactivation emails falsely claimed the action was "as a follow up to your cancellation request." (Verified Compl. ¶¶ 69–74; Williams TRO Decl. ¶¶ 27–28.) Critically, Defendants' own Terms of Service provide that "[i]f an account is terminated for violation of these Terms, no refund will be issued"; the simultaneous issuance of full refunds is Defendants' own contemporaneous admission that the termination was not for cause.

(Williams TRO Decl. ¶ 28; Verified Compl. ¶¶ 75–79.) Within approximately 48 hours, Defendants escalated to device-level blacklisting, preventing Plaintiff from activating Speedify on the Router even through a separate, independently purchased paid subscription. (Verified Compl. ¶¶ 83–87; Williams TRO Decl. ¶¶ 30–31.) The Router's manufacturer, through its CTO Ryan Brenneman, confirmed that "the product is solely designed to work with Speedify, it really has no other function" and that Defendants can make the serial number "dead" and "unable to ever be activated again." (Verified Compl. ¶¶ 30–33; Williams TRO Decl. ¶¶ 14–15.) These facts establish a clear breach of the parties' agreement and an intentional interference with Plaintiff's physical property. The full legal analysis is set forth in the Memorandum of Law filed in support of this Motion.

2. Irreparable Harm: Without a TRO, Plaintiff faces immediate, ongoing, and irreparable harm that cannot be remedied by money damages. First, Defendants have already rendered Plaintiff's AUD $2,725.82 specialized router effectively inoperable for its sole designed purpose, namely multi-WAN bonding and failover, by revoking Speedify licensing and implementing device-level blacklisting. (Williams TRO Decl. ¶¶ 29–31.) This is a continuing deprivation of Plaintiff's property rights that cannot be calculated in monetary terms because the Router's value is inseparable from active Speedify service. Second, Plaintiff has been traveling internationally since January 22, 2026 (ANA Business Class, total cost AUD $7,981.06), with a scheduled return of February 8, 2026 that Plaintiff was unable to take as a direct consequence of the disruption caused by Defendants' conduct. Plaintiff depends on the Router's bonded multi-WAN connectivity for continuity-dependent business operations during this travel, including remote management of Plaintiff's telecommunications network infrastructure as a licensed carrier under the *Telecommunications Act* 1997 (Cth) and the *Security of Critical Infrastructure Act* 2018 (Cth). (Verified Compl. ¶¶ 20–22, 44, 100–104; Williams TRO Decl. ¶¶ 12–13, 22, 48–50.) Third, Defendants have threatened, and are

positioned to effectuate, permanent device-level disablement that would render the Router's serial number permanently "dead" in Defendants' systems, a harm that is by definition irreparable because no amount of money can compel a third party to reactivate proprietary server-side authentication. (Williams TRO Decl. ¶¶ 14–15, 32–33.) Fourth, Defendant Gizis has demonstrated open contempt for this Court's authority: a message relayed to Plaintiff indicates that Gizis stated words to the effect that the Court should "go f--- itself," a statement Defendants have not denied or repudiated when confronted. (Verified Compl. ¶ 99; Williams TRO Decl. ¶ 35.) This contemptuous posture heightens the risk that Defendants will take irreversible destructive action before a hearing on the merits. Fifth, Defendants' conduct has caused demonstrable collateral harm to non-parties who depend on Plaintiff's professional services. James Foerst, an independent cryptocurrency investor in Raleigh, North Carolina, retained Plaintiff on or about January 20, 2026, to provide pre-litigation advisory, consulting, and expert witness services in connection with significant cryptocurrency-related claims. (Foerst Decl. ¶¶ 4–6.) Foerst attests that Defendants' termination of Plaintiff's Speedify service, and the resulting lockout from Plaintiff's secure communications and data analysis infrastructure, has materially impaired Plaintiff's ability to perform this engagement, leaving Foerst unable to obtain the expert analysis necessary to protect, evaluate, and pursue recovery of his digital asset holdings during a period of extreme market volatility. (Foerst Decl. ¶¶ 6, 8–10.) Foerst further attests that cryptocurrency markets operate continuously, without circuit breakers or trading halts, and that every additional day Plaintiff remains unable to perform the consulting engagement compounds harm to Foerst's holdings in ways that monetary damages cannot adequately remedy. (Foerst Decl. ¶¶ 9, 11–12.) Critically, Foerst has been unable to identify a suitable replacement expert with Plaintiff's specific intersection of telecommunications carrier-level infrastructure expertise and cryptocurrency technical knowledge, confirming that the harm is not remediable by substitution. (Foerst Decl. ¶ 7.) The

Foerst Declaration thus provides independent, third-party corroboration that Defendants' conduct is causing ongoing irreparable harm that radiates beyond Plaintiff to non-parties who have retained Plaintiff in reliance on the very infrastructure Defendants have disabled. The irreparable harm analysis is further developed in the Memorandum of Law.

3. Balance of Harms: The balance of equities tips sharply in Plaintiff's favor. The requested relief is narrowly tailored and imposes only a *de minimis* burden on Defendants: reactivating a single paid router subscription (or equivalent licensing/authentication) and removing a device-level blacklist through Defendants' ordinary account administration systems. (Verified Compl. ¶ 122.) Defendants are a commercial software company with the technical capability to restore service through routine administrative action. By contrast, without relief, Plaintiff faces the continuing loss of an AUD $2,725.82 specialized device, disruption to his business operations during international travel, potential non-compliance with Australian telecommunications regulatory obligations, and the permanent destruction of his Router's core functionality. (Williams TRO Decl. ¶¶ 12–13, 22, 48–52.) Moreover, Plaintiff is willing to pay for the service, and he seeks only the restoration of a commercial relationship that Defendants terminated unilaterally, without authorization, and based on a false pretext. Defendants suffer no cognizable harm from being required to provide paid services to a willing customer pending adjudication. The balance is further reinforced by the collateral harm to third parties: as attested in the Foerst Declaration, Defendants' conduct has impaired Plaintiff's ability to fulfill a professional engagement with an independent cryptocurrency investor whose digital asset holdings require ongoing expert analysis during a period of extreme market volatility. (Foerst Decl. ¶¶ 6–12.) The harm to non-parties who have relied on Plaintiff's professional capacity weighs heavily in the equitable calculus and underscores the disproportionate consequences of Defendants' unilateral conduct. The Memorandum of Law addresses this factor in further detail.

4. Public Interest: The public interest strongly favors the requested relief. This case presents issues of broad consumer significance: whether a software-as-a-service provider may unilaterally terminate a paid subscription based on a fabricated "cancellation request," and then remotely disable a customer's purchased hardware to prevent the customer from obtaining substitute service through any means. Defendants market "Powered by Speedify" routers for continuity-dependent use cases, including travel, Starlink connectivity, and multi-WAN failover. Consumers who invest thousands of dollars in specialized hardware on the strength of those representations have a strong public-policy interest in being protected from arbitrary, retaliatory service termination and device-level blacklisting. (Verified Compl. ¶¶ 109–122.) The public interest in enforcing contractual obligations, deterring deceptive trade practices, and preventing the weaponization of proprietary server-side controls to render consumer hardware permanently inoperable all weigh in favor of injunctive relief. The Memorandum of Law further addresses this factor.

## III. NOTICE TO DEFENDANTS

Plaintiff does not seek *ex parte* relief. Plaintiff has nevertheless made diligent and sustained efforts to provide Defendants with actual notice of this application and the urgency of the requested relief. As certified in the accompanying Notice Declaration and documented in the Verified Complaint (¶¶ 87–99), between January 25 and February 7, 2026, Plaintiff sent approximately forty (40) written communications to Defendants through multiple channels, including: (a) emails to Defendant Gizis personally at agizis@connectify.me; (b) emails to Connectify's support team at support@speedify.com; (c) emails to Connectify's legal addresses at uspto@connectify.me, AsheryESQ@gmail.com, lashery@connectify.me, and kamran.emdadi@gmail.com; (d) text messages to Defendant Gizis; and (e) formal pre-suit notices citing the California Consumers Legal Remedies Act (Cal. Civ. Code § 1782(a)) and

demanding corrective action. (Verified Compl. ¶¶ 87–99; Notice Decl.) On February 1, 2026, at 10:41 p.m. UTC, Plaintiff emailed Defendants expressly notifying them that Plaintiff was "in the process of submitting an emergency motion to the US District Court for the E.D. of PA." (Verified Compl. ¶ 99.) Defendant Gizis responded to Plaintiff's communications by email on January 27, 2026, declaring the matter "the end of the legal matter" and directing Plaintiff to "do not contact us again," demonstrating Defendants' actual knowledge of the dispute and deliberate refusal to engage. (Williams TRO Decl. ¶ 34.) Plaintiff also initiated proceedings in the Supreme Court of New South Wales, further demonstrating Plaintiff's diligence in pursuing relief and providing Defendants with additional notice of pending legal action across multiple jurisdictions. (Williams TRO Decl. ¶¶ 41–42.) Despite this comprehensive and sustained notice campaign, Defendants have refused to restore service and have continued to interfere with Plaintiff's ability to access Speedify on the affected Router. Plaintiff does not seek *ex parte* relief and requests that Defendants be given an opportunity to respond, provided the Court can resolve this Motion on an expedited basis given the continuing and irreparable nature of the harm. Formal service of process will be effected separately in accordance with Fed. R. Civ. P. 4, and the Notice Declaration addresses Plaintiff's compliance with all applicable notice and service requirements.

**IV. REQUEST FOR EXPEDITED CONSIDERATION**

This Motion is submitted on an emergency basis because Plaintiff faces immediate, ongoing, and escalating irreparable harm. Plaintiff's international travel commenced on January 22, 2026, with a scheduled return of February 8, 2026, that Plaintiff was unable to take due to the disruption caused by Defendants' conduct. (Williams TRO Decl. ¶¶ 48–50.) As of the date of this filing, Plaintiff remains stranded abroad with no fixed return date, and Defendants' actions have left Plaintiff without the bonded multi-WAN connectivity essential

to his business operations and telecommunications regulatory compliance. (Verified Compl. ¶¶ 20–22, 44, 100–104; Williams TRO Decl. ¶¶ 12–13, 22, 48–50.) Furthermore, Defendants have demonstrated both the capability and the willingness to permanently disable Plaintiff's Router at the device level, and Defendant Gizis's contemptuous statements regarding this Court's authority suggest that Defendants may take irreversible destructive action at any time. (Verified Compl. ¶ 99; Williams TRO Decl. ¶ 35.) Each day without relief deepens Plaintiff's losses and increases the risk that Defendants will render the Router permanently inoperable before the Court can act. Because this action is assigned to the Honorable Gerald J. Pappert, Plaintiff respectfully requests immediate consideration pursuant to Fed. R. Civ. P. 65, Local Civil Rule 7.1(f), and Judge Pappert's Policies and Procedures, Section II.E (Injunctions) (providing that the Court will promptly list any request for a temporary restraining order or preliminary injunction). Plaintiff further requests oral argument or, in the alternative, an expedited conference, consistent with Local Civil Rule 7.1(f) and Judge Pappert's Policies and Procedures, Section II.D.2. Plaintiff is prepared to participate in any pre-hearing conference and to submit proposed findings of fact and conclusions of law as the Court may require.

## V. STATEMENT REGARDING SERVICE

(Local Civil Rule 7.1(d))

On February 10, 2026, Plaintiff provided Defendants with actual notice and courtesy copies of this Motion, together with the supporting Memorandum of Law, the Williams TRO Declaration (with exhibits), the Notice Declaration, and the [Proposed] Temporary Restraining Order, by electronic mail to the following addresses used by Defendants for business, customer support, and legal communications: agizis@connectify.me (Defendant Gizis, CEO); support@speedify.com (Connectify customer support); uspto@connectify.me (Connectify legal/IP); AsheryESQ@gmail.com and lashery@connectify.me (Lauren Ashery, Chief

Counsel); and kamran.emdadi@gmail.com (Kamran Emdadi, outside counsel). The Verified Complaint and Summons will be served on Defendants at Connectify, Inc.'s principal place of business at 601 Spring Garden Street, 3rd Floor, Philadelphia, Pennsylvania 19123, and at Defendant Gizis's residence at 430 Pine Street, Philadelphia, Pennsylvania 19106, through a professional process server and, if authorized by the Court, through the U.S. Marshals Service, in accordance with Federal Rule of Civil Procedure 4. The Notice Declaration provides additional detail regarding Plaintiff's compliance with all applicable notice and service requirements.

## VI. SUPPORTING DOCUMENTS

This Motion is supported by:

1. Memorandum of Law in Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction (filed simultaneously herewith);

2. Declaration of Michael Williams in Support of Emergency Motion for Temporary Restraining Order (the "Williams TRO Declaration"), setting forth the factual basis for the requested relief;

3. Declaration of Michael Williams Regarding Notice and Compliance with Fed. R. Civ. P. 65(b) (the "Notice Declaration"), certifying Plaintiff's diligent efforts to provide Defendants with notice of this application and compliance with applicable notice requirements;

4. Declaration of James Foerst in Support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Foerst Declaration"), providing third-party evidence of irreparable harm to non-party professional engagements and cryptocurrency-related interests;

5. Verified Complaint;

6. Exhibits to the Williams TRO Declaration (filed as separately numbered attachments with objective exhibit titles); and

7. [Proposed] Temporary Restraining Order.

Dated: February 10, 2026

Respectfully submitted,

MICHAEL WILLIAMS, Pro Se
Suite 1524, 50-58 Macleay Street
Elizabeth Bay NSW 2011
Australia
Telephone: +1 701 484 1337
Email: Michael.Williams@glexia.com

/s/*Michael Williams*

Michael Williams

February 10, 2026

## **<u>CERTIFICATE OF SERVICE</u>**

I, Michael Williams, hereby certify that on February 10, 2026, a true and correct copy of the foregoing Emergency Motion for Temporary Restraining Order and Preliminary Injunction and the accompanying Proposed Order was served upon all parties of record by email at the following addresses:

**Connectify, Inc.**

Attn: Alexander C. Gizis, Chief Executive Officer

601 Spring Garden Street, 3rd Floor

Philadelphia, PA 19123

cbiemiller@tlgattorneys.com, dscott@stradley.com, skats@stradley.com, pkingsley@stradley.com, pforet@stradley.com, kcasey@stradley.com, uspto@connectify.me, kamran.emdadi@gmail.com, support@speedify.com, agizis@connectify.me, AsheryESQ@gmail.com, lashery@connectify.me

**Alexander C. Gizis**

430 Pine Street

Philadelphia, PA 19106

agizis@connectify.me

MICHAEL WILLIAMS, Pro Se
Suite 1524, 50-58 Macleay Street
Elizabeth Bay NSW 2011
Australia
Telephone: +1 701 484 1337
Email: Michael.Williams@glexia.com

/s/*Michael Williams*

Michael Williams