February 10, 2026

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA
# PHILADELPHIA DIVISION

| | |
|---|---|
| **Michael Williams**, an individual residing in New South Wales, Australia,<br><br>Plaintiff,<br><br>v.<br><br>**Connectify, Inc. (d/b/a Speedify)**, a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania<br><br>**Alexander C. Gizis**, an individual residing in Philadelphia, Pennsylvania<br><br>Defendants. | Civil Action No. <u>2:26-cv-00818-GJP</u><br><br>**DECLARATION OF JAMES FOERST IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR** |

## <u>DECLARATION OF JAMES FOERST IN SUPPORT OF PLAINTIFF'S</u>

## <u>EMERGENCY MOTION FOR</u>

I, James Foerst, declare as follows pursuant to 28 U.S.C. § 1746:

## I.  IDENTITY AND QUALIFICATIONS

1.      I am an individual residing in Raleigh, North Carolina. I am an independent cryptocurrency investor and digital asset owner. I am not a party to this action. I submit this Declaration voluntarily, of my own accord, in support of Plaintiff Michael Williams's ("Plaintiff" or "Mr. Williams") Emergency Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them. Where statements are made "on information and belief," I have identified them as such and have stated the basis for my information and belief.

2.      I have been actively involved in cryptocurrency investment and digital asset ownership for six (6) years. My experience encompasses the acquisition, management, trading, and security of cryptocurrency holdings across multiple platforms, including participation in decentralized finance ("DeFi") protocols, digital wallet management, private key custody, and blockchain-based transactions. Through my direct experience as an investor and asset owner, I am personally familiar with the volatility, complexity, and security challenges inherent in cryptocurrency markets.

3.      I have followed the developments in the above-captioned matter and have reviewed the Verified Complaint ("Compl."), the Declaration of Michael Williams ("Williams Decl."), and the Memorandum of Law in Support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Memorandum") filed in this action.

## II.  RETENTION OF MR. WILLIAMS AS PRE-LITIGATION CRYPTOCURRENCY ADVISOR AND EXPERT WITNESS

4. I am presently considering litigation in a matter involving significant cryptocurrency-related claims arising from my digital asset holdings. In connection with evaluating the merits and viability of that potential action, and in preparation for the litigation I anticipate filing, I require the services of a qualified cryptocurrency advisor and expert witness. I identified Mr. Williams as a candidate for this pre-litigation advisory and consulting engagement based on his extensive background in telecommunications, secure digital infrastructure, and cryptocurrency-related technology. Mr. Williams is the Managing Director of Glexia Pty Ltd, an Australian telecommunications carrier (Carrier Licence No. 554) that operates critical telecommunications infrastructure, including infrastructure serving Australian Commonwealth and State government agencies. His expertise in secure network architecture, digital asset custody, and the technical infrastructure underlying cryptocurrency transactions made him a strong candidate for the pre-litigation advisory and expert witness engagement I require.

5. I initiated discussions with Mr. Williams regarding a pre-litigation advisory and consulting engagement, with the expectation that Mr. Williams would transition to a formal expert witness role once litigation is commenced. In the pre-litigation phase, Mr. Williams's engagement would involve providing advisory and consulting services to assist me and my counsel in evaluating the cryptocurrency-related dimensions of the contemplated action, including but not limited to: (a) pre-litigation analysis of the technical mechanisms of cryptocurrency transactions and blockchain verification relevant to the claims under consideration; (b) advisory consulting on the tracing, valuation, and potential recovery of cryptocurrency assets at issue; (c) assessment of the security of digital wallets, private key management, and custodial arrangements implicated by the facts; (d) analysis of the intersection of telecommunications infrastructure and cryptocurrency transaction security; and (e) preparation of preliminary technical findings and assessments. Upon the commencement of

litigation, Mr. Williams would provide formal expert testimony and analysis on these same issues.

6.On or about January 20, 2026, I entered into an engagement with Mr. Williams to provide pre-litigation advisory and consulting services, including the preparation of expert testimony, in connection with the contemplated action. However, I have been unable to obtain from Mr. Williams the full scope of services that this engagement requires. On information and belief, based on Mr. Williams's representations to me and consistent with the sworn allegations in his Declaration filed in this action, Defendants' termination of his Speedify services and the resulting lockout from his secure network infrastructure have materially impaired his ability to access the tools, systems, and secure communications infrastructure necessary to perform the pre-litigation advisory and consulting work, and ultimately to provide the expert testimony, that my engagement would require. Specifically, on information and belief, Mr. Williams's secure communications and data analysis environment, which he would need to access in order to conduct cryptocurrency analysis, prepare preliminary assessments, and communicate securely regarding privileged and confidential pre-litigation matters, is accessible only through the Speedify-dependent network path that Defendants have disabled. Mr. Williams is presently providing what limited pre-litigation advisory assistance he can without access to his secure infrastructure, but the scope and quality of his advisory services are severely curtailed by the access restrictions imposed by Defendants' conduct.

7. The inability to fully retain Mr. Williams as a pre-litigation cryptocurrency advisor and prospective expert witness has caused concrete and measurable harm to my interests in the contemplated litigation. The pre-litigation phase is critical: the quality of the advisory analysis Mr. Williams would provide directly informs whether and how to proceed with filing, the framing of claims, and the development of the evidentiary foundation for the

action. Professionals with Mr. Williams's combination of telecommunications carrier-level infrastructure expertise, operational experience serving government agencies, and cryptocurrency technical knowledge are exceedingly rare. I have considered and evaluated potential alternative experts and have been unable to identify a suitable replacement with the specific intersection of qualifications that Mr. Williams possesses. The impairment of his availability as a pre-litigation advisor and prospective expert witness is not readily remediable by substituting another professional, as the specific intersection of his qualifications is uncommon in both the advisory and expert witness markets.

## III. CRYPTOCURRENCY LOSSES AND THE IMPOSSIBILITY OF QUANTIFICATION

8. Based on my direct personal experience as a cryptocurrency investor and digital asset owner, I believe that Defendants' conduct, by depriving Mr. Williams of the secure infrastructure necessary to perform his consulting engagement with me, has exposed me to a category of harm that is uniquely difficult, and potentially impossible, to quantify. I hold significant cryptocurrency assets that are the subject of the contemplated litigation described above. The advisory and consulting services I retained Mr. Williams to provide are essential to the protection, tracing, valuation, and potential recovery of those assets. Without Mr. Williams's expert guidance, I am unable to obtain the informed analysis I need to make critical decisions regarding my digital asset holdings during a period of extreme market volatility.

9. Cryptocurrency markets operate continuously, twenty-four hours a day, seven days a week, three hundred sixty-five days a year, without the circuit breakers, trading halts, or after-hours closures that characterize traditional securities markets. Prices of major cryptocurrencies can fluctuate by 10%, 20%, or more within a single twenty-four-hour period. Smaller or less liquid digital assets can experience even greater volatility. The inability to

access, monitor, trade, or secure cryptocurrency holdings for even a brief period can result in catastrophic and irreversible financial losses.

10.     I hold cryptocurrency assets that require ongoing expert analysis and advisory support in connection with the contemplated litigation. The pre-litigation consulting services I retained Mr. Williams to provide are directly related to the protection, tracing, and potential recovery of my digital asset holdings. On information and belief, Defendants' termination of Mr. Williams's Speedify service, and the resulting lockout from his secure infrastructure, has deprived Mr. Williams of the ability to perform the consulting and advisory work necessary to assist me in evaluating, protecting, and pursuing recovery of my cryptocurrency holdings. This deprivation has persisted since January 27, 2026, and continues as of the date of this Declaration.

11.     Based on my direct experience as a cryptocurrency investor and digital asset owner, I believe that I may be unable to fully recover the value of my cryptocurrency holdings that have been impaired, diminished, or placed at risk as a result of my inability to obtain the expert consulting services I retained Mr. Williams to provide. The reasons for this assessment include, but are not limited to:

(a)     Market Irreversibility: Cryptocurrency market movements during the period in which I have been deprived of Mr. Williams's expert consulting cannot be undone. If the value of my holdings has declined during this period, or if I have been unable to make informed decisions about rebalancing positions or responding to market conditions without Mr. Williams's expert analysis, those losses are permanent and cannot be reversed by subsequent market recovery, because the opportunity to act on informed expert advice at the relevant time has been irrevocably lost.

(b)     Security Exposure: Without Mr. Williams's expert analysis of the security posture of my digital wallets and custodial arrangements, I face ongoing and unquantifiable security risks. Mr. Williams's consulting engagement includes assessing private key management, wallet security, and smart contract exposure related to my holdings. The inability to obtain that expert assessment means that vulnerabilities in my digital asset security may go undetected and unremediated during this critical period.

(c)     DeFi and Smart Contract Risks: To the extent my holdings include positions in decentralized finance ("DeFi") protocols, liquidity pools, staking arrangements, or other smart contract-based instruments, the inability to obtain Mr. Williams's expert analysis and guidance regarding those positions during this period may result in liquidations, impermanent loss, expired yield opportunities, missed governance votes, or protocol changes that materially affect the value of my positions, none of which can be reversed after the fact.

(d)     Valuation Complexity: The amount of loss attributable to Defendants' conduct is unknown and may be unknowable with precision, due to the inherent complexity of cryptocurrency markets. Calculating the harm to my holdings requires reconstructing a hypothetical portfolio trajectory, what decisions I would have made with the benefit of Mr. Williams's expert analysis, across a volatile, 24/7 market over an extended period. This counterfactual analysis is inherently speculative, depends on assumptions about investment decisions that were never informed by the expert advice I was entitled to receive, and becomes exponentially more complex and less reliable with each passing day that Mr. Williams remains unable to perform his consulting engagement. The longer Defendants' conduct persists, the more difficult, and ultimately impossible, it becomes to calculate the true extent of the harm to my digital asset holdings.

February 10, 2026

12.     For the reasons stated above, I believe that my cryptocurrency-related losses resulting from Defendants' conduct, and my inability to obtain the expert consulting services I retained Mr. Williams to provide, may be irrecoverable, and that the total amount of such losses is presently unknown and may never be fully ascertainable. This is not a case in which damages can be neatly calculated after the fact. The nature of cryptocurrency markets, their volatility, their continuous operation, and the irreversibility of missed opportunities, means that every additional day that Mr. Williams is prevented from performing his consulting engagement compounds the harm to my digital asset holdings in ways that monetary damages at a later date cannot adequately remedy.

## IV.  IRREPARABLE HARM AND THE NECESSITY OF INJUNCTIVE RELIEF

13.     Based on my review of the filings in this action and my direct experience as a cryptocurrency investor and digital asset owner, I believe that the harm being caused by Defendants' conduct is irreparable in the traditional equitable sense. The destruction of Mr. Williams's ability to access his secure network and perform the consulting engagement I retained him for has directly impaired my ability to protect, evaluate, and pursue recovery of my cryptocurrency holdings. This harm; both to Mr. Williams's capacity to perform and to my interests as the party who retained him, cannot be adequately compensated by a monetary award after trial.

14.     The harm to my interests is similarly irreparable. Pre-litigation advisory engagements and expert witness retentions are time-sensitive and case-specific. I am presently in the critical pre-litigation evaluation phase, during which the quality and completeness of the advisory analysis directly determines the viability and strength of the contemplated action. The inability to fully retain Mr. Williams during this critical phase cannot be remedied by a later damages award, because the window for pre-litigation evaluation, expert analysis, and

testimony preparation is finite and, once closed, cannot be reopened. Each day of delay in Mr. Williams's ability to perform his advisory role diminishes the value of his pre-litigation contribution and narrows the window for the contemplated filing.

15. I respectfully submit that the emergency relief sought by Mr. Williams, restoration of his Speedify service and removal of any device-level blacklisting, would not only address the immediate threat to Mr. Williams's property and connectivity, but would also restore his ability to fulfill professional engagements, including the pre-litigation advisory, consulting, and expert witness engagement that I entered into with Mr. Williams and that Mr. Williams has been unable to fully perform due to Defendants' conduct.

## V. CERTIFICATION

16. I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on February 10, 2026.

/s/*James Foerst*

James Foerst

February 10, 2026

## <u>**CERTIFICATE OF SERVICE**</u>

I, Michael Williams, hereby certify that on February 10, 2026, a true and correct copy of the foregoing Declaration was served upon all parties of record by email at the following addresses:

**Connectify, Inc.**

Attn: Alexander C. Gizis, Chief Executive Officer

601 Spring Garden Street, 3rd Floor

Philadelphia, PA 19123

cbiemiller@tlgattorneys.com, dscott@stradley.com, skats@stradley.com,

pkingsley@stradley.com, pforet@stradley.com, kcasey@stradley.com,

uspto@connectify.me, kamran.emdadi@gmail.com, support@speedify.com,

agizis@connectify.me, AsheryESQ@gmail.com, lashery@connectify.me

**Alexander C. Gizis**

430 Pine Street

Philadelphia, PA 19106

agizis@connectify.me

MICHAEL WILLIAMS, Pro Se
Suite 1524, 50-58 Macleay Street
Elizabeth Bay NSW 2011
Australia
Telephone: +1 701 484 1337
Email: Michael.Williams@glexia.com

/s/*Michael Williams*

Michael Williams